MILWAUKEE LAND CO., APPELLANT, *v.* RUESINK ET AL., RESPONDENTS.

(No. 3,489.)

(Submitted March 29, 1915. Decided April 13, 1915.)

[148 Pac. 396.]

*Real Property—Ejectment—Sale—Oral Agreement—Statute of Frauds—Assignment — Forfeitures — Pleading and Proof— Variance—Tender—Nonconflicting Evidence—Review—Findings—Appeal and Error.*

**Appeal and Error—Evidence Without Conflict—How Viewed.**
    1.  Where the evidence presents no substantial conflict, questions of fact are eliminated and the remaining questions of law may be determined as upon an agreed statement of facts.

District Court—May Direct Verdict, When.

2.  If the evidence in a jury case is such that reasonable men can come to but one conclusion thereon, the court may direct a verdict in favor of the party entitled to it, or withdraw the case from the jury and render judgment.

Same—When Formal Findings Unnecessary.

3.  In a case tried without the aid of a jury, the evidence justifying but one conclusion, the court need not make formal findings even though request be made for them.

Appeal and Error—Defective Findings—Nonconflicting Evidence—Review.

4.  Where, in a case of the character referred to in paragraph 3, *supra*, the court makes findings, defects in them, though excepted to, do not call for a reversal of the judgment, but will be ignored and the conclusion of the trial court reviewed upon an examination of the whole of the evidence in the record.

Same—Record—New Trial—Nonconflicting Evidence—Duty of Judge Called in.

5.  A district judge called in to determine a motion for a new trial asked for, among other grounds, because of the alleged insufficiency of the evidence to justify the findings of the trial judge, under the circumstances detailed in paragraphs 3 and 4, *supra*, was required to determine, not whether the evidence was sufficient to warrant any particular finding, but whether the final conclusion, in view of the evidence in the printed record, was justified.

Real Property—Sale—Oral Agreement—Statute of Frauds.

6.  Where a contract for the sale of land rested upon an oral agreement, a part payment of the purchase price, the assumption of possession by the vendee and the erection of buildings and other improvements thereon with the knowledge and consent of the vendor, followed by a tender of the balance of the purchase money, constituted such part performance as took it out of the operation of the statute of frauds.

[As to part performance of contract within statute of frauds, see notes in 32 Am. Dec. 129; 53 Am. Dec. 539.]

Same—Contracts—Assignment.

7.  Assignability of contracts being the rule and nonassignability the exception, in the absence of a stipulation to the contrary in an oral agreement to sell land, the right conferred by it was assignable.

Same—Ejectment—Pleading and Proof—Immaterial Variance.

8.  Where, in an action in ejectment, defendants relying upon a contract for the sale of the premises, the evidence though not technically corresponding to the allegations of the answer, did support them in their general scope and meaning, the divergence relating to the mode and time of payment of the final installment of the purchase money only, a finding in favor of plaintiff on the ground of variance was error.

Same—Forfeitures—Duty of Vendor.

9.  After the vendor of land had extended indulgence to the vendee in the matter of making payment of installments until the last one fell due, he could not declare a forfeiture without tendering a conveyance or accompanying the demand for payment with an offer to convey.

Same.

10.  Under a contract of sale, the obligation of the vendor to convey title—then in the United States—was concurrent with the vendee's obligation to pay the balance of the purchase price remaining

unpaid; hence until the former had acquired title and tendered or offered a conveyance, he was not in a position to terminate the contract for failure to pay the last installment.

Same—Contract—Assignment—Right of Partner.
11.  Where a firm was the owner of a right to have title to realty conferred to it, one of its members could rightfully make an assignment thereof while the partnership was in existence; if in process of liquidation, the assignment was good also, under section 5502; and if not authorized to act as liquidating partner, it was valid where the assignee paid value relying upon the credit of the firm and the consideration was devoted to its benefit.

Same—Tender—What may Constitute.
12.  Where the assignee of a contract of sale of land has forwarded a draft to a director of plaintiff corporation—the vendor—to be used to pay the balance due, who, at the time the assignee filed his answer in an action in ejectment, still retained it, the allegation that defendant was willing that plaintiff should retain it in payment of such balance, together with the fact that at the trial it was deposited with the clerk, constituted a tender of the amount due and a payment of it into court for plaintiff's benefit.

[As to sufficiency and effect of tender, see notes in 77 Am. Dec. 470; 30 Am. St. Rep. 460.]

*Appeal from District Court, Custer County; C. C. Hurley, Judge.*

ACTION by the Milwaukee Land Company against Ira Ruesink and John Anderson. Judgment for plaintiff. From an order sustaining defendants' motion for a new trial, plaintiff appeals. Affirmed.

*Mr. Geo. W. Farr* and *Mr. H. H. Field,* of Counsel, submitted a brief and one in reply to that of Respondents; *Mr. Farr* argued the cause orally.

Defendants' defense rests primarily upon the determination of the one question as to whether or not there was in fact any such contract as was pleaded by him in his answer, that a specific performance thereof could be decreed. The term ''specific performance'' presupposes the existence of a contract or agreement. Specific performance is an equitable remedy by which a party to a contract is compelled to do the very acts which he has undertaken to do. (*Rison* v. *Newberry,* 90 Va. 513, 18 S. E. 916.) ''The bill of complaint must properly allege the execution or making of the contract; and the essential terms of the contract must be alleged with distinctness and certainty, and

not left to inference. The bill or complaint must state facts which would be sufficient, upon a default, to enable the court to draft its decree from the averments.'' (36 Cyc. 774.) The allegations of the counterclaim are insufficient, by reason of not being sufficiently definite or certain. (*Duff* v. *Fisher*, 15 Cal. 375; 20 Ency. Pl. & Pr. 435.) ''Where the bill is ambiguous, its averments will be taken most strongly against the complainant.'' (*Id.* 436.) There must be no substantial variance between the contract averred in the complaint and the contract proved by the evidence. The ruling has been stated, in even stronger terms, and it has been said, ''that the plaintiff must prove the identical contract alleged.'' (*Id.* 44.)

Ramsland did not have any authority to bind the company by an oral contract for the sale of its land. This situation alone is sufficient to dispose of the defendants' whole case, for before they can have a decree of specific performance of a contract, either oral or written, it must be a valid contract. (36 Cyc. 543; *Jennings* v. *Brown*, 20 Okl. 294, 94 Pac. 557; *Bradley* v. *Haven*, 208 Mass. 300, 94 N. E. 268.) The proof necessary to establish a parol contract for the sale of land must be clear and convincing. A mere preponderance of the evidence will not suffice. The contract must be certain and definite. (*Rice* v. *Rigley*, 7 Idaho, 115, 61 Pac. 290; *Aday* v. *Echols*, 18 Ala. 353, 52 Am. Dec. 225; *Foster* v. *Maginnis*, 89 Cal. 264, 26 Pac. 828; *Printup* v. *Mitchell*, 17 Ga. 558, 63 Am. Dec. 258; *Robbins* v. *McKnight*, 5 N. J. Eq. 642, 45 Am. Dec. 406; *Hudson* v. *Layton*, 5 Harr. (Del.) 74, 48 Am. Dec. 167; *Johnston* v. *Glancy*, 4 Blackf. (Ind.) 94, 28 Am. Dec. 45; *Wagonblast* v. *Whitney*, 12 Or. 83, 6 Pac. 399; *Purcell* v. *Coleman*, 4 Wall. (U. S.) 513, 18 L. Ed. 435; *De Sollar* v. *Hanscome*, 158 U. S. 216, 39 L. Ed. 956, 15 Sup. Ct. Rep. 816; *O'Connor* v. *Jackson*, 23 Wash. 224, 62 Pac. 761; *Brown* v. *Brown*, 33 N. J. Eq. 650; *Semmes* v. *Worthington*, 38 Md. 298; *Van Wert* v. *Chidester*, 31 Mich. 207; *Banks* v. *Weaver* (N. J.), 48 Atl. 515.)

One partner has no right to execute a deed in the name of the partnership, or to convey the interests of the other copartner

in the copartnership real estate unless the other partner gives his consent thereto and confers power upon him so to do by an instrument in writing. (Story on Partnership, sec. 120; 1 Am. & Eng. Ency. of Law, 960.) Partners are as tenants in common of partnership real estate and a deed by one of the partners does not convey the interest of the other partner not joining in it. (*Alabama Marble etc. Co.* v. *Chattanooga M. & S. Co.* (Tenn.), 37 S. W. 1004.)

*Messrs. Tisor & McKinnon,* for Respondents, submitted a brief; *Mr. C. R. Tisor* argued the cause orally.

Where possession taken in pursuance of a contract, is followed by the making of valuable improvements on the land by the vendee, there is a sufficient part performance according to the rule in nearly all jurisdictions. These acts, as a usual thing, satisfy both tests of part performance, since they indicate, by themselves, that a contract relating to the specific land has been made, and since they frequently, if not generally, involve a change of condition on the vendee's part which could not adequately be compensated in damages if specific performance were not refused. (36 Cyc. 655; *Calanchini* v. *Branstetter,* 84 Cal. 249, 24 Pac. 149; see note, 3 L. R. A. (n. s.) 790; *Hunt* v. *Hayt,* 10 Colo. 278, 15 Pac. 410; *Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918; *Cobban* v. *Hecklen,* 27 Mont. 245, 70 Pac. 805; *Wright* v. *Brooks,* 47 Mont. 99, 130 Pac. 968; *Eaton* v. *Whitaker,* 18 Conn. 222, 44 Am. Dec. 586; Pomeroy on Contracts, p. 164.) In *Bigler* v. *Baker,* 40 Neb. 325, 24 L. R. A. 255, 58 N. W. 1026, it was held that when the vendor in a parol agreement for the sale of land puts the purchaser in possession, and the latter, while holding out such agreement makes lasting and valuable improvements upon the premises, such facts amount to a performance of the contract by him.

The plaintiff recognized a contract existing between itself and Way & Ratchford, and also the defendant, John Anderson, as their assignee, and under the well-defined principle of law, the plaintiff cannot now, after having received benefits under

the contract and recognized the same by their conduct, be heard to take an inconsistent position.    Where one having the right to accept or reject a transaction takes and retains funds thereunder, he becomes bound by the transaction, and cannot avoid its obligation or effect by taking a position inconsistent therewith.    (16 Cyc. 786.)

There was a valid assignment to the defendant, John Anderson, upon which he is entitled to a decree of specific performance. The assignment was made in the name of the firm by one of the members of the firm and for the purpose of which it was executed, and it is sufficient.    (*McNeal Pipe etc. Co.* v. *Woltman,* 114 N. C. 178, 19 S. E. 109; *Edwards* v. *Spalding,* 20 Mont. 54, 49 Pac. 443; *Wright* v. *Brooks,* 47 Mont. 99, 130 Pac. 968.)    In the *McNeal Case, supra,* it is held that a trust deed under seal executed in the name of the firm by one of the partners is binding on the firm as a contract, although not as a deed.    The above authorities are applicable to this question and the authorities cited by counsel for appellant on this point are inapplicable, for the reason that no deed was executed or attempted to be executed by Way & Ratchford to John Anderson, the defendant.

There was no forfeiture of the contract by plaintiff.    Where time is not the essence of the contract or strict compliance as to time of performance by the purchaser has been waived, the vendor is not entitled to rescind for default of the purchaser in performance without first tendering a deed and demanding performance by the purchaser.    (39 Cyc. 1375.)    Where time is or is not the essence of the contract, if the vendor has waived strict compliance with its terms, as regards time of payment, he cannot thereafter rescind or forfeit the contract without notifying the purchaser of his intention to do so, unless payment is made and allowing him a reasonable time for performance.    (39 Cyc. 1384; *Boone* v. *Templeman,* 158 Cal. 290, 139 Am. St. Rep. 126, 110 Pac. 947; *McCroskey* v. *Ladd,* 96 Cal. 455, 31 Pac. 558; *Russ Lumber etc. Co.* v. *Muscupiabe Land etc. Co.,* 120 Cal. 521, 65 Am. St. Rep. 186, 52 Pac. 995; *Underwood* v. *Tew,* 7 Wash. 297, 34 Pac. 1100; *Gorham* v. *Reeves,* 3 Ind. 83.)    The same is true

where the delay has been in completing the payments, provided there has been no substantial change in the circumstances and relations of the parties during the interval, and the interest will constitute not only a theoretical but an actual compensation for the purchaser's default in payment. Again, if the vendee takes and retains possession of the premises with the vendor's consent, mere delay in bringing suit, or even in paying the price, will not prevent him from compelling a conveyance upon a subsequent payment or tender of the amount due; nor will his right to the relief be cut off until the vendor places a time-limit to payment at or before a specified day and notice is given that the agreement will be rescinded unless the demand is complied with. (*Bennie* v. *Becker-Franz Co.*, 14 Ariz. 580, 134 Pac. 280; Gray v. *Pelton*, 67 Or. 239, 135 Pac. 755.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This is an appeal from an order granting defendants' motion for a new trial. The action is in ejectment to recover the possession of lot 1, block 4, in the townsite of Baker, Custer (now Fallon) county. The complaint is in the usual form, alleging title and right to possession in plaintiff and ouster by defendants. The separate answer of defendant Ruesink admits that he is in possession, but denies all the other allegations in the complaint. Denying plaintiff's title and right to possession except as admitted in his counterclaim, the defendant Anderson seeks affirmative relief upon these allegations: That during the month of October, 1908, the plaintiff, by and through its duly authorized agent, T. O. Ramsland, entered into an oral contract and agreement with A. S. Way and J. D. Ratchford, copartners doing business under the firm name of Way & Ratchford, by which it agreed to sell and convey to them the lot in controversy for the sum of $1,000; that the said Way & Ratchford then paid to Ramsland in cash the sum of $333.35, which the latter accepted as part payment of the purchase price and thereupon delivered to Way & Ratchford a receipt in writing, acknowledging pay-

ment of said sum; that under the contract so entered into, and in consideration of the part payment of the purchase price so made, Way & Ratchford were let into possession of the lot, and by themselves and their assignees have been in possession ever since; that when the contract was made, the plaintiff did not have title to the lot, but expected to obtain it from the United States government; that later, during the month of October, 1908, the plaintiff delivered to Way & Ratchford duplicates of the form of contract used by it in making sales of lots at Baker, in which was recited an acknowledgment of the receipt of part payment of the purchase price to Ramsland, and that it was then understood by Way & Ratchford that the balance of the purchase price should become due and payable when plaintiff received title from the United States, and should be able to convey it to Way & Ratchford; that in January, 1911, Way & Ratchford, for a valuable consideration, transferred to this defendant all their interest in the said lot, and that ever since that time he has been, and now is, in the possession thereof; that while so in possession of the lot, the said Way & Ratchford and this defendant have erected buildings thereon and made other improvements of the value of $5,000, which cannot be removed without great injury thereto, all of which belong to this defendant by bill of sale executed to him by Way & Ratchford on November 3, 1909; that during the fall of 1910 the plaintiff obtained title to the lot from the United States, and thereafter, on January 21, 1911, this defendant forwarded to the principal office of plaintiff at Seattle, Washington, the balance of the purchase price with interest, in all $779, together with the duplicates of the contract theretofore delivered to Way & Ratchford, with assignments indorsed thereon by Way & Ratchford to this defendant, and demanded that a deed be delivered to him; that the plaintiff refused to deliver the deed, but retained the said duplicates and assignments, and that it has never offered to return the sum of $779 to the defendant, and has at all times since refused, and does now refuse, to execute and deliver the deed. It is further alleged that Way & Ratchford and this defendant have com-

plied with all the terms of the agreement to purchase said lot, but that the plaintiff has failed and refused to comply with them; that it has never returned, nor offered to return, the cash payment made by Way & Ratchford when the contract was made, and that defendant has always been ready to have the plaintiff retain the entire amount of the purchase price paid to it, and accept a deed. It is also alleged that Way & Ratchford and this defendant have since the date of the contract been in the occupation of the lot with the knowledge and consent of plaintiff. Demand is made that defendant be decreed to be the equitable owner of the lot and that plaintiff be required to execute and deliver to him a good and sufficient conveyance of the legal title. There is also a prayer for general relief. By reply the plaintiff admits that in the month of October, 1908, it did not have title to the lot, having obtained it, as defendant Anderson alleges, in the fall of 1910. It admits that there are buildings and improvements on the lot and that the defendants are in possession of it. It denies all the other allegations of the counterclaim.

At the opening of the trial a jury was waived, and counsel stipulated in effect that plaintiff would be entitled to recover if defendant Anderson was not, upon the evidence adduced by him in support of his counterclaim, entitled to the relief demanded. The court, Hon. Sydney Sanner presiding, made formal findings and conclusions of law in favor of plaintiff and ordered judgment accordingly. Judge C. C. Hurley, the successor to Judge Sanner, by general order sustained defendants' motion for a new trial.

Counsel for plaintiff open their argument in their brief with this statement: "The question to be determined by the court on this appeal is whether or not there is a decided preponderance of the evidence against the findings and decision of the trial court, and if there is, the order will * * * be affirmed; otherwise not." They proceed upon the assumption that the only question open to consideration by this court is whether, because Judge Hurley did not preside at the trial and could not exer-

cise the discretion ordinarily vested in a trial judge in determining a motion for a new trial (*Gibson* v. *Morris State Bank,* 49 Mont. 60, 140 Pac. 76), he did not err in his conclusion that the evidence preponderates decisively against the findings.

The motion for a new trial was made upon several of the statutory grounds, among them that the evidence was insufficient to justify the findings and that the decision was against [1] law. Apparently these were the only grounds urged at the hearing. There was no substantial conflict in the evidence. This being the condition, the case was stripped of questions of fact, and it remained only for the court to determine the question of law arising upon all the evidence viewed as an agreed statement of facts. (*Helena Nat. Bank* v. *Rocky Mt. Bell Tel. Co.,* 20 Mont. 379, 63 Am. St. Rep. 628, 51 Pac. 829; *Murray* v. *Hauser,* 21 Mont. 120, 53 Pac. 99; *State ex rel. Quintin* v. *Edwards,* 40 Mont. 287, 20 Ann. Cas. 239, 106 Pac. 695.) If a [2] case is being tried to a jury and the evidence is such that reasonable men can come to but one conclusion thereon, the court may, as the case requires, direct a verdict for the party entitled to it, or withdraw the case from the jury and render judgment. (Rev. Codes, sec. 6761; *Consolidated Gold etc. Min. Co.* v. *Struthers,* 41 Mont. 565, 111 Pac. 152.) So when, as [3] here, the case is submitted to the court without a jury and the evidence justifies but one conclusion, formal findings are unnecessary, though request be made for them in conformity with section 6766 of the Revised Codes. The judgment will not be reversed if the request is disregarded. (*State ex rel. Quintin* [4] v. *Edwards, supra.*) For the same reason, if the court makes them, this court will not reverse the judgment because of defects in them, or any of them, though exception has been reserved because of the defects, under section 6767. In such a case this court will ignore the formal findings and upon examination of the whole of the evidence determine whether the conclusion reached thereon by the trial court was correct. In [5] determining the motion as made, therefore, Judge Hurley was in the same position with reference to the evidence as is

this court.   (*Gibson* v. *Morris State Bank, supra.*)   He was required to decide, not whether the evidence was sufficient to sustain any particular finding, but whether, in view of the allegations in the answer, setting forth the terms of the contract upon which the defendants rely and the evidence disclosing the result of the negotiations had between Ramsland and Way & Ratchford, and the subsequent events down to the trial, Anderson is entitled to the relief demanded.   Though the answer is not a model pleading, yet if the legitimate inferences to be drawn from the evidence justify the conclusion that the contract was made substantially as alleged therein and that Way & Ratchford complied with its requirements, there can be no question that the plaintiff ought to be compelled to convey title to Anderson.   Upon this assumption, the decision of Judge Sanner [6] was erroneous and the defendants were entitled to a new trial.   True, the contract was left to rest entirely upon the oral agreement.   Nevertheless the payment of the cash installment of the purchase price as stipulated, coupled with the assumption of possession by Way & Ratchford with the consent of the plaintiff, and the erection of buildings and other improvements thereon with its knowledge and acquiescence, with the expectation by Way & Ratchford that they would be vested with title as soon as plaintiff acquired it, followed by a tender of the balance of the purchase money, constituted such a part performance of the contract as, under the rule generally recognized, took it out of the operation of the statute of frauds and authorized the court to decree a specific performance of it.   (*Cobban* v. *Hecklen,* 27 Mont. 245, 70 Pac. 805; *Stevens* v. *Trafton,* 36 Mont. 520, 93 Pac. 810; *Wright* v. *Brooks,* 47 Mont. 99, 130 Pac. 968, and cases cited.)   Under the assignment by Way & Ratchford to Anderson, the latter was substituted in their stead, and became entitled to such relief as they could demand [7] had the assignment not been made.   Assignability of contracts is the rule, nonassignability is the exception.   In the absence of any stipulation in the agreement or contract itself to the contrary, the right conferred by it is assignable.   (*Flinner*

*v. McVay,* 37 Mont. 306, 15 Ann. Cas. 1175, 19 L. R. A. (n. s.) 879, 96 Pac. 340; *Winslow* v. *Dundom,* 46 Mont. 71, 125 Pac. 136.)

The evidence shows, and the court found, these facts: On October 29, 1908, T. O. Ramsland was the local special agent of the plaintiff to negotiate sales of lots in the townsite of Baker to which plaintiff had not then secured the legal title. He was not vested with authority in writing or otherwise to complete sales and make conveyances, but all of his negotiations were subject to approval by plaintiff. This was known to Way & Ratchford, as was also the fact that Ramsland's contracts when made were to be embodied in writing, the form of which was to be furnished by the plaintiff. On that date he agreed to sell to Way & Ratchford the lot in controversy for $1,000, one-third in cash and the balance payable in two equal installments, due, respectively, at the expiration of one and two years thereafter. As soon as the cash payment was made, Way & Ratchford entered into possession of the lot and erected valuable improvements thereon, and by themselves and their assignee, Anderson, have remained in possession with the knowledge and consent of the plaintiff. When the agreement was made, Way & Ratchford knew that the plaintiff had only the equitable title. In due course and within a few days after the completion of the negotiations between Ramsland and Way & Ratchford, and after receipt by the proper officers of the plaintiff of the installment of the purchase money by the latter, the plaintiff had prepared and forwarded to Way & Ratchford in duplicate, for execution, a contract in the form made use of by it in the sale of lots at Baker. The duplicates were intended to be executed by Way & Ratchford and returned to plaintiff. Upon execution by it, one of them was to be delivered to Way & Ratchford, the plaintiff retaining the other. The duplicates were received by Way & Ratchford and retained unexecuted until January 21, 1911, without explanation to the plaintiff. They were never executed by plaintiff. Way & Ratchford did not make the payments of the second and third installments of the purchase

money when they fell due, and after the third fell due they expressly refused to make further payment and so advised the plaintiff, until the plaintiff could convey to them the legal title. They did not thereafter make payment, nor did the plaintiff at any time tender them a deed. On November 3, 1909, the defendant Anderson was put in possession by Way & Ratchford under an incomplete assignment to him of their rights. On January 21, 1911, Ratchford, on behalf of the firm, signed duplicates of the contract and indorsed thereon assignments of all the firm's rights to the lot to Anderson and delivered them to him. He thereupon caused them to be forwarded to the general agent of the plaintiff at Seattle, Washington, with a draft for $779.00, principal and interest of the two last installments of the purchase money, payable to the agent with a demand for a deed. The demand was refused and the draft returned. On February 4 the draft was forwarded to the vice-president and general manager of the plaintiff, who returned it with a refusal to convey. Thereupon Anderson, through one Lemmon, forwarded the draft to E. D. Sewall, one of the directors of plaintiff, who resided at Chicago. After consulting with the other officers of the plaintiff, Sewall advised Lemmon that the plaintiff would not recognize any right in Anderson. By oversight he failed to return the draft, which remained in his possession unused and unindorsed until the trial. At the time Ratchford made the assignment to Anderson, both knew that the plaintiff had determined to refuse recognition in either of them of any right under the contract of sale. On March 28, 1911, the plaintiff caused to be served upon the defendants formal written notice to vacate the lot, and to remove their improvements therefrom. This the defendants refused to do. The payment alleged to have been made at the time of the sale on October 29, 1908, was represented by $150 in cash and a note for the balance, accepted by Ramsland as cash, which was paid at maturity. The plaintiff received the full amount.

The record discloses these additional facts: Way & Ratchford went into possession immediately and began the erection of the

buildings, which at the date of trial were of the value of $4,500. The duplicates of the contract were not forwarded to Way & Ratchford until the note was paid. This was ninety days after the sale. At that time the buildings on the lot were in course of construction. While it was understood when the sale was made that the transaction was to be evidenced by a writing executed by the parties, the terms to be embodied in it, other than those fixing the amounts and due dates of the deferred payments, were not discussed nor settled. Why Way & Ratchford did not execute the duplicates, the evidence does not disclose. Apparently the plaintiff, by not requiring the execution of them, was content to let the transaction rest upon the oral contract. In any event, the plaintiff demanded payment of the deferred installments when they fell due. When the last one matured and demand was made for payment, Ratchford informed Ramsland that payment would not be made until the plaintiff could convey title. Though Ramsland knew at this time that the plaintiff had secured title from the government some time early in September, he did not inform Ratchford of this fact; nor did plaintiff then or thereafter tender a deed or demand payment. After the assignments were made to Anderson on January 21, 1911, and tender of the balance due was made by him with demand for a deed, an effort was made by Ramsland, acting for Anderson, to induce the plaintiff to accept payment and deliver the deed. The officers of the plaintiff consistently refused to do so, putting their refusal exclusively upon the ground that they had elected to declare the contract of sale forfeited. The reason why the draft was forwarded to Mr. Sewall after its return from the Seattle office was that Mr. Lemmon, being a mutual friend of Anderson and Mr. Sewall, was of the opinion that Mr. Sewall would act as mediator between Anderson and the company and induce the company to execute and deliver the deed. This result, as the findings show, he failed to accomplish.

Mr. Sewall testified that he had retained the draft by oversight, having inadvertently put it in his letter files with the letter from Mr. Lemmon in which he received it, and that when

this controversy arose and it became necessary to examine his correspondence, he found it and delivered it to plaintiff's counsel. At the trial it was introduced in evidence and filed with the clerk. When Anderson went into possession on November 3, 1909, he did so under a bill of sale executed to him by Way in the firm name of Way & Ratchford. This covered the buildings and improvements only. The reason why the execution of the formal assignment was deferred was that the consideration had not been fully paid until the date of its delivery. The purpose of the assignment was to vest Anderson with the equity of the firm of Way & Ratchford, and to put Anderson in position to demand a deed from plaintiff. The consideration paid went into the assets of the firm. The plaintiff was fully informed of Anderson's claim as early as October 19, 1910. During the latter part of December its general manager informed Anderson that it had elected to terminate the contract for failure of Way & Ratchford to pay the balance of the purchase price. No offer was made by Anderson to pay the balance, until he forwarded the draft to the office of plaintiff at Seattle. Way was not present at the trial and it was not known to Ratchford or Anderson where he then was. At the close of the evidence counsel for the plaintiff offered to return to Way & Ratchford, or to pay to anyone whom the court thought entitled to it, the cash payment made to the plaintiff at the date of the purchase, but without interest. A tender of the money was not made.

Does the foregoing evidence establish a contract substantially as alleged in the answer? It may be conceded that Ramsland was not vested with authority to complete sales for the plaintiff. Nevertheless it cannot be controverted that by its acceptance of the cash payment made to Ramsland by Way & Ratchford in pursuance of the arrangement he made, its acquiescence in the possession and improvements of the lot by Way & Ratchford by consent of Ramsland, its demand for the payment of the deferred installments at their respective due dates, and its expressed election to "forfeit the contract" in December, 1910,

it purposely and with full understanding of its terms ratified the oral agreement entered into by Ramsland and became bound by it just as would a natural person have been bound had he made the agreement for himself under the same circumstances. Under its terms, Way & Ratchford were to receive a deed upon the discharge of the deferred payments. That it was the intention to have a formal contract executed in duplicate expressing the terms agreed upon, and perhaps others, is not of importance. If there were nothing else to consider, the conclusion would seem necessarily to follow that the terms of the contract as proved present such a material variance from that alleged, as [8] to amount to a failure of proof. But under the rule of law applicable, such is not the case. The variance is in the single particular as to when and how the balance of the purchase money was to be paid; otherwise the contract as alleged, and the terms of it, are clearly shown. The subject matter, the parties and the consideration were the same as alleged, and the obligation to make payment was the same. The plaintiff did not have title. It therefore could not, under the agreement as alleged or under that proved, have demanded performance by Way & Ratchford until it could tender a title. (Rev. Codes, sec. 6106.) In effect, the answer alleges the equities of defendants as they existed at the time the action was brought, instead of the specific terms of the contract. Though the evidence does not technically correspond to these allegations, it nevertheless supports them in their general scope and meaning. Therefore, the variance ought to have been disregarded as immaterial, within the rule declared by sections 6585 and 6586 of the Revised Codes, and the trial court ought to have awarded the defendants relief. It is apparent that the plaintiff was not misled to its prejudice in its defense to the counterclaim on the merits. Therefore, under the provisions cited *supra,* the trial judge should have treated the variance as immaterial and found according to the evidence, either after ordering the answer to be amended to correspond with the proof or without such an amendment. The divergence is one of detail rather than of

substance, and related merely to the mode of payment—a particular which was not of vital consequence. (*American etc. Loan Co.* v. *Great Northern Ry. Co.*, 48 Mont. 495, 138 Pac. 1102, and cases cited.)    The conclusion of the trial court cannot be justified on the ground of variance.

The attempt by the plaintiff to declare a forfeiture was abor- [9] tive.    Conceding that it might have done so upon failure of Way & Ratchford on demand to pay the first deferred installment when it fell due, after extending to the firm indulgence until the last installment was due, it could not terminate the contract without tendering a conveyance or at least accompany- [10] ing the demand for payment with an offer to convey. The obligation to convey was concurrent with the obligation to pay (Rev. Codes, sec. 4901), and the right to terminate the contract did not arise until plaintiff had acquired title and tendered or offered a conveyance.    (*Boone* v. *Templeman,* 158 Cal. 290, 139 Am. St. Rep. 126, 110 Pac. 947; *Suburban Homes Co.* v. *North, ante,* p. 108, 145 Pac. 2; 39 Cyc. 1375.)

Nor can the action of the court be justified on the ground [11] that Anderson was not shown to be the assignee of Way & Ratchford.    Under the terms of the contract, Way & Ratchford were not vested with title, but a mere right to have title conveyed to the firm when plaintiff had acquired it.    The right was the property of the firm.    If the partnership was still in existence, Ratchford had the authority, as the general agent of the firm, subject, of course, to the provision of section 5483 of the Revised Codes, to make the assignment for the firm as he did.    (Sec. 5482.)    If the firm was in process of liquidation— and how this was does not appear—the assignment by Ratchford was valid, for ostensibly he was acting for the firm and had authority to dispose of its property.    (Sec. 5502.)    If he was not authorized to act as the liquidating partner, still Anderson paid him value for the right assigned, apparently relying upon .the credit of the firm, and the consideration was devoted to its benefit.    The assignment was for this reason valid.    (Sec. 5501.)

The refusal by the plaintiff to accept Anderson's tender was
[12] not because he did not tender cash, but because the con-
tract had been forfeited. It was therefore sufficient at the time
it was made. At the time the answer was filed, the draft was
still in the hands of Mr. Sewall. Anderson, knowing nothing
of the circumstances of its retention by Mr. Sewall, was justified
in the belief that since he had sent it to Mr. Sewall to be used
to pay the plaintiff, he being one of its officers, it was then in
the possession of the plaintiff. Under the circumstances, the
allegations in the answer that Anderson was willing that the
plaintiff should retain the amount represented by the draft in
payment of the balance due, coupled with the fact that the draft
is now in the hands of the clerk, are equivalent to a tender of
the amount due and a payment of it into court for plaintiff's
benefit.

The order is affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE SANNER, being disqualified, did not hear the argu-
ment and takes no part in the foregoing decision.

Rehearing denied May 7, 1915.

(Submitted March 29, 1915. Decided April 13, 1915.)