ERIE, APPELLANT, v. WAHL, STATE LIQUOR CONTROL ADMINISTRATOR, ET AL., RESPONDENTS.

(No. 8423.)

(Submitted January 16, 1945. Decided January 19, 1945.)

[155 Pac. (2d) 201.]

*Messrs. M. L. Parcells* and *Frank E. Blair,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. R. V. Bottomly,* Attorney General, *Clarence Hanley,* Assistant Attorney General, *T. H. MacDonald* and *Lyman H. Bennett, Jr.,* for Respondents, submitted a brief; *Mr. Hanley* argued the cause orally.

MR. JUSTICE CHEADLE delivered the opinion of the court.

By his first cause of action plaintiff seeks recovery of the sum of twenty dollars per month during the period May 18, 1934, to January 22, 1941, as the reasonable value of the alleged use and occupancy by the State Liquor Control Board of certain premises in the town of Ennis, Montana, as a liquor store and warehouse. By his second cause of action plaintiff claims recovery of the sum of $1,986.04, alleged to be due as overtime pay, at the rate of $.54086 per hour, as liquor vendor at Ennis, during the period May 19, 1937, to May 31, 1940. These claims are apparently based upon implied contracts of the defendants, or their predecessors, to pay plaintiff the reasonable value of the occupancy and services mentioned.

Defendants' answer, in addition to a general denial of both causes of action, sets up the following affirmative defense: That between the dates above mentioned plaintiff was employed by the State Liquor Control Board, under a contract whereby plaintiff was to provide his services as liquor vendor at Ennis, Montana, and the premises to be used as a liquor store and warehouse, including light and heat therefor, at the agreed amount of seventy-five dollars per month; that pursuant to said agreement plaintiff, during such period, acted as liquor vendor and

provided such premises and furnished light and heat therefor, and was paid the sum of seventy-five dollars therefor each month; that said sum was received by plaintiff and accepted as full payment for services rendered and for use and occupation of said premises, including heat and light; and that all sums becoming due to plaintiff under such agreement have been fully paid.

It is alleged in the complaint, and admitted by the answer, ██ that plaintiff was employed by defendants at the agreed compensation of seventy-five dollars per month, of a six-day week of eight hours per day. Plaintiff's claim is for extra-time work, over and above the eight hours per day stipulated.

The exact terms of the contractual relationship are somewhat obscure, except as alleged and admitted by the pleadings. The first negotiation by plaintiff appears to have been an interview with the Governor at Helena, during the spring of 1934, during which plaintiff was advised to "make an application for the store." Plaintiff on March 5, 1934, wrote to the Governor suggesting that Ennis would be a suitable place for a liquor store, and advising, "I conduct a grocery store in Ennis which is centrally located and would be a suitable place for the sale of liquor." To this the Governor replied, under date of March 20, 1934, that plaintiff's request would receive the liquor board's consideration. On May 18, 1934, the Liquor Control Board wrote plaintiff to the effect that it was sending him a small stock of merchandise, "as per previous arrangements." The record does not disclose what these "previous arrangements" were, except that plaintiff was to receive a salary of fifty dollars per month. Plaintiff testified that this was increased to seventy-five dollars after two or three months, and such amount was paid monthly until January, 1941, by vouchers drawn by the board and marked, "Salary" for the month specified, and containing the notation, "Indorsement on back constitutes payment in full." There was no agreement with or instructions by the board as to where the stock of liquor should be kept. The evidence discloses that it actually was stored in a warehouse under

plaintiff's control, adjacent to his store, and a supply kept on certain shelves in the store. Plaintiff estimated that fifty per cent of the store space was devoted to the liquor business.

In August of 1935 plaintiff filled out and submitted to the board a form requiring certain information, quoted in part as follows:

"To All Vendors:

"In order that we may complete our files, please furnish the following information:

"Store No. *60* City or Town *Ennis* County *Madison* Date store opened *May 23, 1934* Vendor *H. J. Erie* Owner *J. P. Erie* Amount of rent *none* Heat *Stove* What kind? *coal* Type of lights *electric* Is store on agency basis? *Yes* Is vendor paid a salary? *Yes*"

Until May, 1937, the liquor store was operated from 11 a. m. to 7 p. m. daily, except on Sundays and holidays. On May 11, 1937, plaintiff wrote to the board: "Would it be possible to get permission to keep this liquor store open from 9 A. M. till 9 P. M. to accommodate the tourist trade?" By letter of May 18, 1937, the board, through L. M. A. Wass, administrator, replied: "I have your letter relative to hours for selling liquor and in view of the circumstances, I see no objection to your following the privilege recently granted to the stores operating on a commission basis, namely, to sell liquor between the hours of 9:00 a. m. and 9:00 p. m., on all days on which liquor may be legally sold in the state."

Immediately after the receipt of this communication plaintiff commenced the sale of liquor between the hours of nine a. m. and nine p. m. daily. The evidence discloses that plaintiff's grocery store was operated daily from eight a. m. until nine p. m.

No claim was made by plaintiff for overtime or rent until after he ceased to act as vendor, on January 22, 1941. With reference to monthly submission of claims to the board for amounts due him, plaintiff testified on cross-examination:

"Q. On at least once a month you sent in a claim for all

amounts due you, did you not, or were supposed to under the rules of the board A. The claims were sent in for the petty cash fund.

"Q. And nothing else was sent in? A. Other than the salary. I made up a payroll report for my salary.

"Q. Now then, how about the rent. Didn't you claim any rent? A. I did not. I never made any claim for it.

"Q. Were you not supposed to? A. Well, I figured that the Board—I had no reason to figure that they would not pay me rent.

"Q. Were you not supposed to? A. I had no instructions to make out any claims for rent.

"Q. You want your testimony to be that you were not required by the rules of the board to send in a claim for the rent the same as for any other item due at the end of the month? A. They never notified me to send in a claim for rent.

"Q. They never said anything about rent? A. They never mentioned rent, no.

"Q. You knew if you had a claim for anything that it must be claimed for at the end of the month, didn't you? A. I did not know that everything had to be claimed for at the end of each month. I had instructions to make out a claim for petty cash and salary."

With reference to his failure to claim the overtime sued for, plaintiff testified:

"Q. What hours did you keep your store open? A. We opened from eight in the morning and closed around nine at night.

"Q. You did that all the time that you had the liquor store there? A. Yes, sir.

"Q. It was quite a benefit to you in the way of bringing business to your store to have the patrons of the liquor store come in the store. * * * A. It might have helped some.

"Q. It was in response to yours that you got the letter from Mr. Wass giving you permission to keep the store open? A. It was, yes, sir.

"Q. Then it was at your request? A. It was.

"Q. And permission was granted on your request? A. That is correct.

"Q. Did the Montana Liquor Control Board ever ask you to keep your store open over hours? A. Only in the letter that they gave me permission to. * * *

"Q. Did you ever make out a claim for any amount than your petty cash and this amount of what you call your salary? A. I did not, no sir.

"Q. When was the first time you ever presented a claim for rent? A. In April 1941."

At the close of the testimony defendants moved the court to direct a verdict in their favor, which motion was granted as to the first cause of action (for rent) and refused as to the second cause of action (for overtime). The jury found the issues of the second cause of action in favor of defendants. This appeal followed.

Plaintiff and appellant assigns error in two specifications:

I. The trial court erred in granting the defendant's motion for a directed verdict as to the first cause of action, and

II. The verdict of the jury as to the second cause of action is contrary to the evidence and without support in the evidence and against law.

The question of an express contract is not involved. Neither is there any question of fact involved as to the first cause of action which would require or justify determination by the jury. Plaintiff wholly failed to prove facts upon which an implied agreement by defendants to pay the reasonable rental value of the building space involved could be based. In the first place it was not established that such premises were furnished at the instance or request of defendants; secondly, plaintiff indicated to the Board that no rent was contemplated; thirdly, the only reasonable inference to be drawn from plaintiff's failure to claim rental during the seven years of occupancy is that he understood that the payments by the board were made in full settlement of all claims. Certainly plaintiff's failure to

conclude a contract with the board, or to present a claim for rental until three months after his relations with the board were terminated, were not the actions of a reasonable man who expected reimbursement. Plaintiff's explanation of this failure to act—that he had no reason to figure that the board would not pay him rent—is not convincing. . His conduct, we feel, evinced a practical construction of his agreement with the board. As held by this court in *Rentfro* v. *Dettwiler*, 95 Mont. 391, 26 Pac. (2d) 992, 995: "The conduct of the parties manifests the existence and terms of an implied contract, having all the essential elements to render it valid and binding." And in *Dolin* v. *Wachter*, 87 Mont. 466, 288 Pac. 616, 619, this court said: "Where the meaning of a contract is difficult of ascertainment, the practical construction placed upon it by the conduct of the parties themselves usually furnishes a safe guide for its interpretation."

Section 9364, Rev. Codes 1935, provides: "Where, upon the trial of an issue by a jury, the case presents only questions of law, the judge may direct the jury to render a verdict in favor of the party entitled thereto."

As pointed out there is no conflict in the evidence; the situation is the same as where the facts are stipulated. Under such circumstances the case can present only a matter of law to be decided by the judge. As is said by this court in *Milwaukee Land Co.* v. *Ruesink*, 50 Mont. 489, 498, 148 Pac. 396, 398: "There was no substantial conflict in the evidence. This being the condition, the case was stripped of questions of fact, and it remained only for the court to determine the question of law arising upon all the evidence viewed as an agreed statement of facts. *Helena Nat. Bank* v. *Rocky Mt. Bell Tel. Co.*, 20 Mont. 379, 51 Pac. 829, 63 Am. St. Rep. 628; *Murray* v. *Hauser*, 21 Mont. 120, 53 Pac. 99; *State ex rel. Quintin* v. *Edwards*, 40 Mont. 287, 106 Pac. 695, 20 Ann. Cas. 239. If a. case is being tried to a jury and the evidence is such that reasonable men can come to but one conclusion thereon, the court may, as the case

requires, direct a verdict for the party entitled to it, or withdraw the case from the jury and render judgment.''

It is our view that, had this cause of action been submitted to the jury resulting in a verdict in plaintiff's favor, the court would have been required to set such verdict aside. It follows that the court's action in directing a verdict for defendants was correct. *Bean* v. *Missoula Lumber Co.*, 40 Mont. 31, 104 Pac. 869; *Escallier* v. *Great Northern Ry. Co.*, 46 Mont. 238, 127 Pac. 458, Ann. Cas. 1914B, 468.

What we have said with reference to the first cause of action ▇▇▇ might well apply also to the second cause. Therein plaintiff seeks to recover for overtime, which he claims in addition to his agreed salary. This issue was found by the jury in defendants' favor. Plaintiff's specification of error that this verdict is contrary to the evidence and against law, is apparently based upon the allegation of the complaint and admission in the answer that plaintiff was employed by the board, ''at the agreed compensation or wages of seventy-five ($75.00) dollars per month, of a six day week of eight hours per day.'' This admission, however, cannot be construed as an implied agreement by the board to pay plaintiff for extra time worked. Other evidence, namely, that the sale of liquor was permitted by the board at the request of· plaintiff; that plaintiff's grocery business was increased because of such longer hours; that no claim was made by plaintiff during the period of employment; and finally that the vouchers by which plaintiff's salary was paid monthly bore the notation, ''Salary (for period specified). Indorsement on back constitutes a Receipt in Full,'' was before the jury. This court cannot say that such evidence is insufficient to support the verdict.

An implied contract is defined by section 7516, Revised Codes ▇▇▇ 1935, as one ''the existence and terms of which are manifested by conduct.'' The jury decided, and we think correctly, that the conduct of the parties precluded the existence of any such implied contract as contended for by plaintiff.

Plaintiff, in a supplemental brief filed with this court on the

 day of the oral argument, for the first time raises the point of the restriction on hours of labor found in section 4, Article XVIII, of the Montana Constitution, as amended December 2, 1936. Also for the first time he attempts to justify his claim for one and one-half the regular rate for overtime under the provisions of Chapter 56 of the 1939 Session Laws and the Federal Fair Labor Standards Act of 1938, 29 U. S. C. A., sec. 201 et seq. Without going into a discussion of these provisions, suffice it to say they are not here applicable, if for no other reason than that no employment in excess of eight hours per day has been shown.

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ADAIR and ANGSTMAN, concur.