JOHNSON, ET AL., RESPONDENTS, *v.* SMITH, ET AL., APPELLANTS
No. 9231.
Submitted January 12, 1954. Decided April 23, 1954.
Rehearing Denied May 5, 1954.
289 Pac. (2d) 384.

Messrs. Doepker & Hennessey, Butte, Mr. Frank E. Blair, Virginia City, for appellants.

Mr. Charles L. Zimmerman, Butte, Mr. Lyman H. Bennett, Jr., Virginia City and Bozeman, for respondents.

Mr. Maurice F. Hennessey, Mr. Blair, Mr. Bennett and Mr. Zimmerman argued orally.

MR. JUSTICE ANGSTMAN:

Plaintiff Johnson is a real estate broker. Defendant Smith owned land in Madison County on the 25th day of July 1950, and owned grazing rights on other lands. On that day he made a written contract with Johnson, whereby Johnson was given the option to buy or sell the real estate in question, including the grazing rights, at any time before November 1, 1950. The terms of that contract will be more fully discussed later. Johnson claims that he sold the property before November 1, 1950, to plaintiffs Earl Nyhart and Carlos J. Cox. Defendants, other than Smith, are lessees of the property by lease executed after the alleged sale by Johnson to plaintiffs Nyhart and Cox.

This action was brought to compel specific performance of the contract by compelling defendant Smith to convey the property to plaintiffs Nyhart and Cox on payment of the purchase price and that plaintiff Johnson be awarded judgment for his agreed commission in the sum of $1,500, and that it be declared that the lease of the property to defendants other than Smith be declared null and void.

Smith answered separately from the other defendants. He denied generally the material allegations of the complaint and pleaded an affirmative defense, the substance of which was that he gave Johnson an option to sell his land and grazing rights for the sum of $30,000, but that according to the provisions of the grazing leases defendant should have the right to remove improvements; that the agreement was made at a place where there was no means of checking the actual acreage, and it was agreed that plaintiff Johnson should check the acreage and insert the same in the agreement; that by mutual mistake the deeded land was estimated to comprise about 2,000 acres and about six sections of Taylor grazing land; that the correct amount of

deeded land should have been 1,650 acres and 2,036.60 acres of Taylor grazing lands; that the Taylor grazing land leases contained a clause permitting removal of improvements within three months after termination of the lease unless the subsequent lessee compensate the lessee for improvements of a permanent nature; that upon checking the records plaintiff Johnson found the correct description of the deeded land and the grazing land but failed to insert the correct description in the agreement, all of which was known to plaintiffs Cox and Nyhart prior to the time when they claimed to have purchased the land; that plaintiffs did not offer to pay to him the agreed sum of $30,000 nor have they agreed to comply with the provisions of the Taylor grazing leases with respect to the improvements. It set forth the lease by Smith to the other defendants as of December 14, 1950. His answer sought reformation of the agreement of July 25, 1950, between him and Johnson so as to express the true agreement as alleged by him.

The other defendants filed a separate answer and cross complaint. They denied generally the allegations of the complaint and asserted their rights as lessees from defendant Smith.

The reply to the answer of Smith put in issue the allegations concerning the alleged mutual mistake of the parties and alleged in substance that the Taylor grazing leases may be sold as contemplated by the parties and that there are no provisions of the leases that would adversely affect the agreement between Johnson and Smith.

The reply to the answer of the remaining defendants alleged in substance that when such defendants took their lease they knew that Johnson had sold the land and the grazing rights and improvements to plaintiffs Cox and Nyhart. It denied generally the material allegations of the answer.

Trial was to the court without a jury. Judgment went in favor of plaintiffs and against defendants for the relief demanded in the complaint.

Defendants have appealed from the judgment. Their first contention is that Johnson had no authority under the agreement

with Smith to establish a contractual obligation beween Smith and plaintiffs Cox and Nyhart. In the view we take of the case it is unnecessary to consider this question.

Defendants contend that the evidence is insufficient to sustain the judgment and this point is determinative of the appeal.

Attached to the complaint and made a part of it is the agreement between Johnson and Smith which forms the basis of the action. This agreement was drawn by Johnson and executed in the wide open spaces of Madison County adjacent to a public highway. It was made on the 25th day of July 1950, and gave Johnson ''a sole and exclusive option to sell or purchase'' the property described as ''about 2,000 acres of deeded land in South Eastern part of Township 7 South Range 6 West and some in Township 8 South 6 West together with all of the appurtenances thereunto belonging, including about 6 Sections acres of Taylor grazing land; adjoining all on head Stone Cr. in Madison County, Montana.'' The selling or purchase price was fixed at $30,000. It contained the statement, ''The following personal property is included Encumbrance on land———————————————.''

Johnson was authorized to ''accept a substantial payment of the purchase price'' in case of a sale or purchase and the balance to be paid to Smith upon proof of a good title. Johnson was to have a commission of five percent. Time was made of the essence of the contract and it was to remain in full force and effect until November 1, 1950.

Upon checking the records Johnson found that instead of 2,000 acres of deeded land Smith only owned 1,680 acres. About six weeks after making the agreement with Johnson, it occurred to Smith that they had overlooked the matter of fencing on the Taylor grazing lands which he claimed was worth $5,000 and he told Cox, Nyhart and Johnson of that fact.

About September 14, 1950, plaintiffs Nyhart and Cox paid $100 to Johnson and Johnson executed to them the following receipt: ''Received from Nyhart and Cox of Twin Bridges, the sum of One Hundred Dollars as payment on the Jos T. Smith option to purchase his land situated in Township 7 and 8 south

Range 6 west, according to the terms of the listing of said property as listed on the 25th day of July, A. D. 1950.''

Likewise Johnson issued and delivered to Cox and Nyhart the following certificate: ''This is to Certify, that I, A. S. Johnson, of Dillon, Montana as agent for Joseph F. Smith, have sold to C. J. Cox and Earl Nyhart of Twin Bridges, Montana, All of the land mentioned in that certain Agreement, made and entered into by and between said Joseph F. Smith and A. S. Johnson, dated on the 25th day of July, A. D. 1950, a copy of which is hereto attached. That I, the undersigned have accepted a payment of One hundred Dollars, Lawful money of the United States, which sum is to be paid to said Joseph F. Smith, as a part of the Purchase price.''

On October 25th Johnson advised Smith by letter that he had sold the land to Cox and Nyhart and sent him a cashier's check for $100 which was the amount paid to him by Cox and Nyhart.

On October 18th Cox and Nyhart paid to Johnson an additional $1,000 as part of the purchase price and this amount was paid to Smith on October 31st by Johnson by delivering his personal check in that amount.

Meanwhile the record shows the following events. After Johnson checked the records to ascertain the exact acreage of deeded and grazing lands he wrote to Smith on August 20th saying: ''In checking over the records at Virginia City, and the Taylor Grazing at Whitehall, the records show that you own or have deeded land to the extent of 1640 acres and—Taylor Leased— 240 acres, a total of 1880 acres, I have the plats and maps showing all ownership, so when you come in look me up and we will check over the acreage, my parties interested, think that—your asking price is too much for 1640 acres of deeded land.''

As late as October 28th Nyhart and Cox addressed to Smith the following ''Offer to Purchase'': ''To Joseph F. Smith, Dillon, Montana:

''Reference is made to the contract of sale made by you to A. S. Johnson, under date July 25, 1950, and affecting the sale

of your ranch in Townships 7 and 8 South, Range 6 West, Montana.

"You are hereby notified that the undersigned are ready, able and willing to purchase all of your land, comprising 1680 acres, or thereabouts, and to pay you therefor at the rate of $15. per acre, upon receipt of abstract showing clear title and warranty deed executed by you. Such abstract will be examined within ten days after receipt thereof; and if clear title is shown we will pay you the full purchase price above mentioned.

"We waive any claim for sale or delivery or horses in this contract."

On October 31st, or the last day of the option agreement, Johnson wrote Smith as follows:

"When you gave me the agreement to sell your ranch, you seemed to be in good faith, I talked to Jeff Cox and Earl Nyhart first, for the reason they have been running their cattle on your place for sometime, and I thought it would be just to them so that they would know the place was for sale. They looked the agreement over and said they would buy the place on the terms mentioned.

"As you had never said anything about the fence on the Taylor land, I did not mention it to them.

"C. J. Cox and Earl Nyhart have made me another—payment of $1,000.00 to show their good faith, so I am sending it to you herewith my personal check to apply on the purchase price.

"I think the best way is for you and these boys to get together on the deal, and close up the deal—without any trouble or hard feelings, let's try to avoid a lawsuit."

The record shows that plaintiffs were negotiating with Smith with respect to the terms of the sale throughout the life of the option agreement. No definite terms had been agreed upon. Plaintiffs Cox and Nyhart were willing to pay the purchase price of $30,000 and waive the shortage in the acreage of deeded land from 2,000 acres stated in the written agreement to the actual acreage of 1,680 acres provided Smith would forget his demand for the $5,000 for his fencing. This, however, Smith flatly re-

fused time and again to do. Plaintiffs contend that defendant Smith is precluded from claiming anything for his fences since they were not mentioned in the option agreement. The agreement contained a place to insert the personal property intended to be included and nothing was inserted therein.

Fences are generally regarded as personal property. Mattison ▆ v. Connerly, 46 Mont. 103, 126 Pac. 851. The Taylor grazing leases contained the following: "Upon the expiration of this lease or its earlier termination, the signing officer may at his discretion and upon written petition filed by the lessee 30 days from date of such expiration or termination require a subsequent lessee, prior to the execution of a new lease to agree to compensate the lessee for any grazing improvements of a permanent nature that may have been placed on the leased lands during the period of the lease in accordance with the regulations, 43 CFR 160.17. The lessee will be allowed three months from the date of expiration or termination of the lease within which to remove such improvements as are not disposed of in the manner set forth above; if not removed or otherwise disposed of within the said period, such improvements shall become the property of the United States."

The fences under the terms of the leases were removable as ▆ grazing improvements unless transferred by the lessee. The agreement between Smith and Johnson included appurtenances to the deeded land. But fences on the Taylor grazing lands cannot be considered appurtenances to the deeded land. Likewise plaintiff Johnson wrote the option agreement. If it be ambiguous, doubts regarding its meaning should be resolved against him and in favor of defendants. Blankenship v. Decker, 34 Mont. 292, 85 Pac. 1035.

The record reveals also that long after the option agreement had expired and on December 6th, plaintiffs Cox and Nyhart met with defendant Smith in a lawyer's office in Dillon to have drawn a leasing agreement whereby plaintiffs Cox and Nyhart were attempting to lease the identical lands here involved from defendant Smith. A written lease was actually drawn but never

signed because defendant was unwilling to agree to its terms. The conduct of the plaintiffs Cox and Nyhart therefore indicates that they did not consider themselves as having bought the property from Smith (compare Erie v. Wahl, 116 Mont. 515, 155 Pac. (2d) 201), for if so there would have been no occasion to lease it from him.

A reading of the record will reveal that there never was a meeting of the minds of the parties as to the terms of the so-called sale. A person cannot be held to have made a contract by accident. There must be a meeting of the minds as to its terms. That was lacking here. Cox and Nyhart were thinking in terms of a sale for $30,000 including the fences whereas Smith repeatedly insisted upon an additional $5,000 to cover the value of the fences.

The evidence is insufficient to sustain the judgment for plaintiffs. The judgment is reversed and the cause remanded with directions to enter judgment for defendants.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES BOTTOMLY, FREEBOURN and ANDERSON, concur.