[No. 6051.]

HEERT v. THE RIDENOUR-RAYMOND GROCER COMPANY.

1. **Trial — Function of the Jury** — Every question of fact in dispute is to be left to the jury, where the issue is tried by the jury; and they are the exclusive judges of the credibility of the witnesses and the effect of the testimony.—(46)

2. **Sale—Delivery to Common Carrier**—A merchant who, pursuant to the directions of his customer, delivers the goods to a common carrier consigned to the customer under no special agreement or directions, may look to the customer for the price, though the goods are lost. The delivery to the carrier is in legal effect a delivery to the purchaser. The effect is the same though the seller pays the freight, not intending to retain the title.—(46)

3. **Payment—Effect**—One who, with full knowledge of all the facts, voluntarily pays a disputed bill, will not be permitted to recover the amount.—(46, 47)

*Appeal from Denver District Court*—Hon. BOOTH M. MALONE, Judge.

Mr. ALFRED MULLER, Mr. H. H. HINDRY, and Mr. ARTHUR F. FRIEDMAN, for appellant.

Messrs. DAVIS & WHITNEY, for appellee.

Mr. JUSTICE MUSSER delivered the opinion of the court:

The issues in this case were on a counter-claim of the appellant, who was defendant below, against the appellee as plaintiff. In the year 1903, the defendant was engaged in the tobacco business in Denver. During the summer, he spent most of his time in the mountains, and his business was conducted by his bookkeeper, who ordered goods, drew checks, and appears to have had general authority, subject to such instructions as were given him by defendant, who came down once or twice a month. During the same spring, the defendant, personally and by his bookkeeper, had purchased from the plaintiff several

shipments of tobacco, called drop shipments. The plaintiff took the orders and sent them to the manufacturer. The latter shipped the tobacco, consigned to the defendant at Denver, and prepaid the freight. It was the understanding in such cases that what the parties termed a bill of lading would be sent to plaintiff, and by it delivered to the defendant. The manufacturer offered to purchasers of such shipments premiums in cigars. Certificates of such premiums were sent to the defendant, who surrendered such certificates to the plaintiff, and received the premiums. About June 1st, the defendant purchased from the plaintiff a drop shipment of tobacco. The evidence indicates that this purchase was made by the bookkeeper. The plaintiff sent the order to the manufacturer. The latter delivered the tobacco to a railroad company at St. Louis, consigned to the defendant at Denver, and prepaid the freight. The shipment was lost in a flood, in transit, and never reached the defendant. In July, the bookkeeper filed a claim against the railroad company for this shipment of tobacco, and the defendant afterwards ratified the filing of this claim. The defendant could not remember whether he had received a bill of lading for this particular shipment, though there was evidence from which the jury might believe that he had received the usual bill of lading, in due course, and had filed it with his claim against the railroad company.

About the first of July, the plaintiff presented its monthly bill for June to the defendant, which included the lost shipment. The amount of this shipment was taken out by defendant, and the balance paid. The plaintiff again included this lost shipment in its July bill, presented in August, and it was paid. The defendant testified that he instructed his bookkeeper not to pay for this lost shipment, but contrary

to such instruction, the bookkeeper did pay it.   He further testified that, as soon as he came to Denver in September and ascertained that it had been paid, he notified the plaintiff that it had been paid by mistake, and against instructions, and demanded back the money.   The bookkeeper testified that the defendant concluded he would have to pay for the lost shipment, and instructed the bookkeeper to pay it.   The defendant testified that he did not know whether he received and accepted the premium cigars for this particular shipment or not, but there was evidence that would warrant the jury in believing that he had obtained them.   The defendant testified that this particular shipment was to be delivered at Denver.   It is now claimed that this testimony as to the place of delivery stands uncontradicted in the record.   Of course if there was a special agreement to deliver the tobacco at Denver, the plaintiff could not recover the purchase price of defendant until it was so delivered to him.   It is true that this testimony is the only direct testimony in the record as to the place of delivery. · However, on the other hand, the salesman who made the sale for plaintiff, in his testimony claims to state all that was said at the time of the sale, and there is no mention in his testimony that any particular place of delivery was designated.   The defendant was away most of the time, did not make this particular purchase, and did not appear to have been present.   The jury may have thought that he was not in a position to state facts; that what he did say was a conclusion drawn, and that while he may have been honest in his conclusion, he might be mistaken.   The claim of defendant against the railroad company persistently followed up, short of a suit, is at variance with defendant's testimony, for if the lost goods had not been delivered to him as agreed upon, he had no claim against the

railroad company. The testimony of the bookkeeper that the defendant directed payment for the lost shipment, is at variance with defendant's testimony that the goods were to be delivered to him at Denver, for if the goods were to be delivered to him at Denver, why should he pay for them before delivery, and at a time when it was certain they would not be delivered? All these facts and circumstances, and others that might be mentioned, tended in some degree to overthrow or weaken the testimony of defendant as to the place of delivery.

Some authorities say that the prepayment of the freight affords some evidence that the manufacturer intended to retain title to the tobacco until it reached its destination.—*McLaughlin v. Marston,* 78 Wis. 670; *Neimeyer Lumber Co. v. B. & M. R. R. Co.,* 54 Neb. 321.

This evidence, however, may have been overcome in the minds of the jury by other facts and circumstances. For instance, these drop shipments were special sales at special prices, for a limited period, and were fully explained to the defendant and his bookkeeper. It appears from the evidence that, in addition to the prepayment of freight, the manufacturer offered to the purchaser of drop shipments, premiums in cigars, and the purchaser obtained the tobacco, the freight and the premium cigars for the special price named. The prepayment of freight seems to have been made, not for the purpose of retaining title in the manufacturer or the plaintiff, but for the same purpose as the premium cigars, namely, to induce a purchase. It was also thoroughly understood that when the tobacco was consigned by the manufacturer to the defendant, the plaintiff would have no control over it, and under no circumstances was it to be diverted to the plaintiff, yet it was the plaintiff who was to pay the manufacturer

for it. When the manufacturer consigned it, as agreed upon, the plaintiff lost all control of the tobacco and was liable to the manufacturer for its price. On the whole, therefore, the evidence as to the place of delivery, and when the title passed to the defendant, if it did pass, leaves that question in doubt, and it was properly for the jury. The jury were the sole judges of the weight of the evidence and the credibility of the witnesses. From the evidence, they could conclude that there was no special agreement as to the place of delivery; that the prepayment of the freight was not for the purpose of retaining title; that the tobacco was delivered to a common carrier at St. Louis, consigned to the defendant without specific directions, or contract differing from ordinary uses, and that a bill of lading was sent to the plaintiff for the defendant and received by the latter. If the jury so concluded, there was presented a situation whereby the delivery of the tobacco to the railroad company at St. Louis was, in law, a delivery to the defendant, and he then became the owner thereof.—*Cary v. Williams*, 47 Colo. 259, 107 Pac. 219; *Westman Merc. Co. v. Park*, 2 Col. App. 545; *Neimeyer Lumber Co. v. B. & M. R. R. Co.*, 54 Neb. 321; *L. S. & M. S. Ry. Co. v. Live Stock Bank*, 178 Ill. 506; *Kelsea v. Ramsey & Gore Mfg. Co.*, 55 N. J. L. 320; Benjamin on Sales (7th ed.), § 181.

There is another phase of the evidence upon which the jury was instructed and from which it could fairly conclude that a situation existed at variance with the allegations of defendant's counterclaim and with his testimony, and that is with reference to the payment for the tobacco. According to the testimony of the bookkeeper, defendant paid for the lost shipment voluntarily, with full knowledge of all the facts and circumstances, and at a time when he knew it was lost. If a person pays a dis-

puted bill under such circumstances, he cannot recover the money back by counter-claim or otherwise. —*Lewis v. Hughes,* 12 Colo. 208 at 212; *Steck v. Irrigation Co.,* 4 Col. App. 323; 22 Ency. of Law (2d ed.) 609; 30 Cyc. 1298.

Upon conflicting evidence, therefore, the jury found against the contentions of the defendant, and their verdict is conclusive. In his brief, the defendant objects to several instructions given by the court, mainly on the grounds that some of the instructions were not based upon any evidence in the case, and that several of them were based alone upon the evidence favorable to plaintiff. It would not be profitable to analyze these instructions and go at length into the evidence to show that these objections are not well taken. A mere reading of the record discloses that the instructions are based upon evidence. That the theory of the case from the viewpoint of defendant and the evidence in his behalf were fully covered by the instructions, will be disclosed by reading all the instructions given.

Finding no error in the record against the defendant, the judgment is affirmed.     *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE BAILEY concur.