OLD KENTUCKY DISTILLERY, RESPONDENT, *v.* STROM-
BERG-MULLINS CO., APPELLANT.

(No. 3,832.)

(Submitted December 4, 1917.   Decided December 21, 1917.)

[169 Pac. 734.]

*Claim and Delivery—Sales—Carriers—Title—Demand—Tender
—Trial—Directed Verdict.*

Trial—Undisputed Evidence—Directed Verdict—When Proper.
  1. In a case tried by a jury where the evidence is undisputed and furnishes the basis for but one reasonable conclusion, the only question for determination is one of law, and the court may direct a verdict in favor of the party entitled to it.

Sales—Delivery to Carrier—Reservation of Title in Vendor—Claim and Delivery.

2.   The rule that delivery of goods by the seller to a carrier for shipment to the purchaser is, in the absence of circumstances indicating a contrary intention, sufficient evidence of delivery to vest title in the purchaser is not controlling where the seller deviates from the contract in a substantial particular: as where the purchaser has directed them to be consigned to himself, by consigning them to some other person with the request that they be reconsigned to the purchaser.

[As to delivery of goods to carrier for shipment as delivery to purchaser, see note in Ann. Cas. 1916A, 1046.]

Same—Demand—Tender—When Unnecessary.

3.   Where defendant in a claim and delivery action asserted the right to hold goods shipped to it with a request by the seller that it reconsign them to the purchaser, and thus to force the latter to pay a debt—assuming title in the purchaser and controverting that of plaintiff on the merits—demand for possession and tender were unnecessary, since the law does not require a useless thing.

*Appeal from District Court, Silver Bow County; J. B. Mc-Clernan, Judge.*

ACTION by the Old Kentucky Distillery against the Stromberg-Mullins Company.   Judgment for plaintiff and defendant appeals.   Affirmed.

*Messrs. McCaffery & Tyler,* for Appellant, submitted a brief; *Mr. Earl Genzberger,* of Counsel, argued the cause orally.

Grant became the owner of the whisky when the respondent accepted his order and approved it.   Then the general rule of determining when title to property passes should be applicable. It is, that if a delivery of goods by a seller thereof to a common carrier for the transportation to the buyer fully performs the seller's contract, and he retains no control over them, such a delivery is a delivery to the buyer.   (Ann. Cas. 1916A, 1046 n.; 11 Ency. of Evidence, p. 579.)

Grant did not designate what road or how he desired the goods delivered.   Consequently if they were delivered in a manner common and customary among wholesalers to a common carrier of freight, such would be a delivery to Grant.   (*Kelsea* v. *Ramsey & Gore Mfg. Co.,* 55 N. J. L. 320, 22 L. R. A. 415, 26 Atl. 907; *Finn* v. *Western R. Corp.,* 112 Mass. 525, 17 Am. Rep. 128.)

Grant had at least some property in the whisky.   He had made advances in payment of it, and if he did not acquire the absolute title, his title was only subject to be interrupted during transit by the vendor.   (*Dows* v. *Cobb*, 12 Barb. (N. Y.) 310; *Adams* v. *Bissell*, 28 Barb. (N. Y.) 382.)   These goods were delivered to a third person, and the delivery was made without any reservation or control over the property.   In that case, under the facts, the only person who would have a right to sue for the recovery of the goods would be Grant, the consignee.   (*Snee* v. *Prescot*, 1 Atk. 245.)   So the purchaser to whom goods have been shipped in accordance with his order is the proper person to name as owner in an indictment for their theft.   (*Walker* v. *State*, 9 Tex. App. 39.)

*Messrs. Binnard & Rodger* and *Mr. J. A. Poore*, for Respondent, submitted a brief; *Mr. Poore* argued the cause orally.

The title to the goods did not pass at the time of the delivery to the carrier, and consequently at the time Stromberg-Mullins Company took possession of the goods they belonged to the Old Kentucky Distillery.   (*Mette & Kanne Dis. Co.* v. *Lowrey*, 39 Mont. 124, 129, 101 Pac. 966; Mechem on Sales, secs. 733, 736; 35 Cyc., pp. 193, 316).

The general rule that a delivery of goods to the common carrier constitutes delivery to the purchaser does not apply where it appears that the contract for the sale of the goods was not complied with.   Before a delivery of goods to a carrier will constitute a delivery to the consignee so as to pass the title and make the consignee liable as for the goods sold and delivered, the goods must correspond with the order in quantity and quality, and in fact with the terms of the contract.   (*Sutherland Medicine Co.* v. *Baltimore*, 81 Ark. 229, 98 S. W. 966; *Bray Clothing Co.* v. *McKinney*, 90 Ark. 161, 118 S. W. 406; *Wolf* v. *Dietzsch*, 75 Ill. 205; *Ellis* v. *Roche*, 73 Ill. 280; *Alsberg* v. *Latta*, 30 Iowa, 442, 445; *Corning* v. *Colt*, 5 Wend. (N. Y.) 254; *Steinhardt* v. *Bingham*, 90 App. Div. 149, 85 N. Y. Supp. 1044; 182 N. Y. 326, 75 N. E. 403; *Bruce* v. *Pearson*, 3 Johns. (N. Y.)

534.)   When goods are shipped by some common carrier other than one designated by the buyer and delivered to such carrier, it is not a delivery to the buyer. (*Wheelhouse* v. *Parr,* 141 Mass. 593, 6 N. E. 787; *Wilson* v. *The Truxillo,* Fed. Cas. No. 17,841; *Hills* v. *Lynch,* 3 Robt. (N. Y.) 42; *Fleming* v. *Mills,* 5 Mich. 420.)   And when a seller directs goods to a point at which the buyer does not receive goods, the delivery to the carrier is not a delivery to the purchaser. (*American Standard Jewelry Co.* v. *Witherington,* 81 Ark. 134, 98 S. W. 695.)   When goods are purchased to be delivered at one point and delivered to a common carrier for shipment to the purchaser directed to another point, it is not a delivery to the purchaser. (*Heert* v. *Ridenour-Raymond Grocer Co.,* 43 Colo. 42, 139 Am. St. Rep. 259, 108 Pac. 968; *International Money Box Co.* v. *Southern Trust etc. Co.,* 93 App. Div. 309, 87 N. Y. Supp. 881.)   Where the purchaser of goods directs that they be shipped to a certain person, but the seller sends them to another person, delivery to the carrier will not be considered a delivery to the purchaser. (*Woodruff* v. *Noyes,* 15 Conn. 335; *Woodbine Children's Clothing Co.* v. *Goldnamer & Son,* 134 Ky. 538, 20 Ann. Cas. 1026, 121 S. W. 444.)   The vendor's title to property under a contract expressly providing that the delivery was to be made at a certain place is not divested until the delivery is made as agreed. (*Neimeyer Lumber Co.* v. *Burlington etc. R. Co.,* 54 Neb. 321, 40 L. R. A. 534, 74 N. W. 670.)

The fact that the goods were delivered to Stromberg-Mullins Co. prior to the commencement of the suit, and there being no evidence that they parted with them, they are presumed, in the absence of any evidence to the contrary, to be still in possession. (*Sullivan* v. *Girson,* 39 Mont. 274, 102 Pac. 320; sec. 7962, Rev. Codes, subd. 32.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action in claim and delivery brought by plaintiff to recover possession of five barrels of whisky of the alleged value of

$465.11. At the close of the evidence the district court directed a verdict for the plaintiff. From the judgment entered thereon and from an order denying it a new trial, the defendant has appealed. The controversy arose out of the following facts:

The plaintiff's place of business is at Louisville, Kentucky. On January 11, 1913, David Grant, who was then conducting business as a saloon-keeper at Dillon, Montana, ordered from the plaintiff, to be shipped to him at Dillon, five barrels of Kentucky Dew whisky on or before March 1, 1913. The order was oral, being made through M. J. Green, a traveling salesman of the plaintiff, who was at Dillon at the time. Green made a memorandum upon an order blank such as was generally used by him for taking orders for liquors, specifying the quality, age, *etc.*, of the whisky desired by Grant, the price per gallon, and terms of payment. The price made to Grant was $2.59 per gallon at Dillon, including the federal revenue tax and freight; Green agreeing that, if Grant should, upon receipt of the whisky at Dillon, be obliged to pay a greater amount of freight than that which was added to the selling price per gallon at Louisville ($2.36, including the revenue tax), he would make up the difference. Grant agreed to pay the federal revenue tax of $1.10 per gallon in cash at the date of shipment. The plaintiff was to draw on him for that amount. The balance of the purchase price was to be paid within four months, or, at Grant's option, within thirty days at a discount of four per cent. Green left with Grant a memorandum containing a detailed statement of the items going to make up the agreed price. In a letter of that date to plaintiff inclosing the order blank, Green requested plaintiff, if possible, to arrange to have the shipment included in "a pool car to Butte." Upon receipt of Green's letter the plaintiff approved the order, and a note was made upon the order blank of Green's request. Grant did not know that such an arrangement was intended or was made until he was notified of the receipt of the whisky by the defendant in Butte. The meaning of the expression "pool car" was explained by plain-

tiff's witnesses as follows: In order to reduce the charge for freight, by securing carload rates, which are less than the rates upon smaller shipments, two or more shippers from the same point to the same or different purchasers residing at a distant point by mutual consent pool or consolidate their separate shipments in order to make a full carload, each identifying the packages making up his shipment by appropriate tags or marks. If the shipments are intended for different purchasers residing at the same or near-by points, consignment of the car is made in the name of one of the shippers to one of the purchasers who, in accordance with a previous agreement with the several shippers, distributes the different shipments to the respective purchasers entitled to them, collecting from each his proportionate share of the freight. Upon inquiry plaintiff's traffic manager ascertained that the Kentucky Distilleries & Warehouse Company was consolidating a car for the defendant at Butte. He thereupon requested this company to obtain from defendant its consent to allow the Grant shipment to be included in this car. On January 20 this company wrote to defendant asking its permission to include a shipment of ten barrels from Grabfelder & Co., also of Louisville, to the Caplice Commercial Company at Butte, and of the five barrels from the plaintiff to Grant at Dillon. On January 27 it replied as follows: "On the 24th we telegraphed you to route the car of whisky ordered *via* Burlington, Northern Pacific at St. Paul. It will be satisfactory to us if you include the two shipments specified in yours of the 20th. Later we are in receipt of yours of the 24th and trust you will get the car off promptly according to instructions." The car reached Butte prior to February 11 consigned to the defendant; the plaintiff having in the meantime notified defendant that it contained the Grant shipment. On February 18 defendant wrote to plaintiff as follows: "We are in receipt of yours of the 15th in reference to five (5) barrels of whisky, for Dan Grant, sent in a car consigned to us by Kentucky Distilleries & Warehouse Co. You are mistaken when you state that this was a

pool car, as it was made up by us and was consigned and delivered direct to us. The five (5) barrels were placed in the car by the K. D. & W. Co. without solicitation on our part, and when they were received we decided to hold them awaiting a satisfactory answer from Mr. Grant in regard to a just account which we have carried against him for years. We inclose you herewith a copy of the letter which we wrote him on receipt of the shipment, and we think the matter can be safely left for him and us to settle between ourselves. As you can see from the inclosed copy, we are not unreasonable in either our position or our request." It also wrote Grant that his shipment had been received, and that it was being held pending his payment of a debt alleged to be due from him to defendant. On the same date Grant wrote to plaintiff: "I have received notice from the Stromberg-Mullins Co. that they have received five barrels of whisky from you marked to me, but that they are holding the same, claiming that I owe them and that they will hold the same until their account is settled. They have no legal claim against me and I look to you for the whisky I ordered, and if delivery cannot be had kindly return to me the money. The whisky was to be delivered at Dillon and I am not doing business with the Stromberg-Mullins Co. of Butte." On March 11 he telegraphed: "When are you going to deliver my 5 bbl. whisky? Answer." To this, plaintiff replied: "We have filed suit to secure immediate possession of our whisky." And on March 30 Grant wrote to plaintiff: "I am on my last bbl. of K. D. Do you think I will get my 5 bbl. within a short time? If not I will have to order elsewhere. Please let me hear from you by return mail." Upon the shipment of the whisky the plaintiff drew upon Grant for the amount of the federal tax, $197.69. This Grant paid. Prior to the date of the purchase of the whisky in controversy Grant had made other purchases from the plaintiff, but none of them had been shipped in a pool car, and all of them had been consigned directly to him at Dillon.

Counsel for defendant have made several assignments of error in their brief, but it will not be necessary to notice them in

detail. The substantive question raised and submitted is whether the court erred in directing a verdict for the plaintiff.

The rule is well established by the decisions of this court that [1] when, in a case being tried to a jury, the evidence is undisputed and furnishes the basis for but one reasonable conclusion, the only question for determination is one of law, and that the court may direct the jury to render a verdict in favor of the party entitled to it. (*Consolidated etc. Min. Co.* v. *Struthers,* 41 Mont. 565, 111 Pac. 152; *Milwaukee Land Co.* v. *Ruesink,* 50 Mont. 489, 148 Pac. 396.)

As to the facts set out in the foregoing statement there is no material controversy. Neither is there any controversy that the plaintiff made verbal demand upon the defendant for delivery of the whisky and tendered to it the freight from Louisville to Butte at the carload rate. There is some conflict in the statements of the witnesses, however, as to whether the tender was made immediately before or immediately after the action was commenced. As will be pointed out later, in view of the position assumed by the defendant as to its rights in the premises, it is immaterial whether demand and tender were made at all. The [2] determining question to be decided is: In whom was the title to the whisky vested when the action was commenced? Counsel for defendant, assuming that by delivery to the carrier at Louisville through the Kentucky Distilleries & Warehouse Company for shipment to Grant plaintiff fully performed its obligation under the contract, insist that the title at once vested in Grant, and hence that plaintiff cannot maintain this action. To sustain their position they invoke the rule that the delivery of goods by a seller to a carrier for shipment to the purchaser, in the absence of circumstances indicating a contrary intention, is sufficient evidence of delivery to vest title in the purchaser. They say that under this rule the carrier becomes the agent of the purchaser to accept delivery for him, and that by delivery to the carrier the seller relinquishes all control over the shipment to the purchaser. The rule is elementary. (*Mette & Kanne Distilling Co.* v. *Lowrey,* 39 Mont.

124, 101 Pac. 966; *Willman Mercantile Co.* v. *Fussy,* 15 Mont. 511, 48 Am. St. Rep. 698, 39 Pac. 738; 1 Mechem on Sales, sec. 739.)   In his work on Sales, Mr. Mechem, in section 739, says: "The effect of the delivery to the carrier under proper circumstances is thus not only to transfer the title, but also to fix ordinarily the time and place at which the title passes.   With the title go the risk and liability, and the seller may recover the price though the goods never arrived, or, without his fault, are injured on the way."

The rule thus stated is recognized by the courts generally. If, however, the seller deviates from the contract in a substantial particular, as, for illustration, by delivering goods other than those ordered (*Mette & Kanne Distilling Co.* v. *Lowrey, supra*), or by directing them to a point at which the purchaser does not receive goods (*American Standard Jewelry Co.* v. *Witherington,* 81 Ark. 134, 98 S. W. 695), or when they are purchased for delivery at a point named, by failing to deliver them at that point (*Heert* v. *Ridenour-Raymond Grocery Co.,* 48 Colo. 42, 139 Am. St. Rep. 259, 108 Pac. 968), or by delivery to a carrier other than the one selected by the purchaser (*Woodbine Children's Clothing Co.* v. *Goldnamer,* 134 Ky. 538, 20 Ann. Cas. 1026, 121 S. W. 444), or when the purchaser has directed them to be consigned to a particular person, by consigning them to some other person (*Woodruff* v. *Noyes,* 15 Conn. 335), in none of these cases is delivery to the carrier delivery to the purchaser so as to vest title in him, unless, being informed of the deviation, the purchaser assents to it.   The only inference permissible from the undisputed facts is that Grant purchased the whisky for consignment to himself at Dillon in the usual way.   The contract was silent as to how the consignment should be made.   Plaintiff was free to select the carrier to which it made delivery; but it was bound by its promise implied by the circumstances to make the consignment to Grant at Dillon. Instead of doing this, it chose the pool car arrangement, and made the consignment to the defendant, to be by it reconsigned

to Grant. This was evidently for its own benefit, *viz.*, to gain the advantage of the lower rate of freight in order to make good its guaranty to Grant that the price to him at Dillon should not exceed $2.59 per gallon. Grant was therefore not vested with the title, and was clearly within his rights in refusing to recognize defendant as his agent for any purpose, though, as shown by its letter of February 18 to plaintiff acknowledging receipt of shipment and its notice to Grant, defendant assumed to hold the shipment for the latter pending a settlement of its claim against him.

Counsel contend that in any event it was the exclusive province of the jury to determine the ownership of the whisky under appropriate instructions. Under the uncontroverted evidence, this became a question of law for the court.

Counsel contend also that the court erred in failing to submit to the jury the question whether demand for possession was made by plaintiff before the action was commenced, and whether a tender was made of the freight. There is some conflict in the testimony as to whether formal written demand was made before the action was commenced; but there is no controversy that verbal demand was made by one of plaintiff's attorneys. This was sufficient. But, aside from this, the defendant, [3] assuming that Grant was the owner of the whisky, claimed the right to hold it for the purpose of forcing Grant to adjust a claim due to it. At the trial it asserted title in Grant in order to defeat recovery by the plaintiff; in other words, it controverted plaintiff's title on the merits. Under these circumstances a demand was not necessary. (*Bennett Bros. Co. v. Tam,* 24 Mont. 457, 62 Pac. 780; 34 Cyc. 1410). Neither, for the same reason, was tender necessary. Mr. Stromberg, the president of defendant, testified in effect that it was the purpose to hold the whisky for Grant in order to enforce a settlement of defendant's claim, notwithstanding a demand and tender had been made. A tender would therefore have been futile. The law does not require a useless thing. (*Stanford* v. *Coram,* 26

Mont. 285, 67 Pac. 1005; *Cassidy* v. *Slemons & Booth,* 41 Mont. 426, 109 Pac. 976.)

The verdict was properly directed. The judgment and order are therefore affirmed.

*Affirmed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.

