GUNDER, RESPONDENT, *v.* HUGGANS, APPELLANT.

(No. 5,537.)

(Submitted September 20, 1924.   Decided November 8, 1924.)

[233 Pac. 901.]

*Joint Adventures—Profits and Accumulations—Evidence—Insufficiency—Directed Verdict—Pleading—Statutes of Other States.*

Pleading—Statutes of Another State—How Pleaded.
   1.  A party relying for recovery on a statute of another state must plead so much thereof as is applicable; hence the bare statement that under the law of such state plaintiff was entitled to one-half of her deceased father's estate was insufficient.

Complaint—Defect Curable by Answer.
   2.  Under the rule that a defective complaint may be cured by the answer, *held,* that plaintiff's failure to plead properly a statute of another state (see par. 1 above) was rendered harmless by the averment in the answer in effect admitting the allegation of the complaint based on the statute attempted to be pleaded, thus rendering proof of the statute unnecessary.

Trial—Directed Verdict—When Proper.
   3.  Where the evidence in a case being tried by a jury is undisputed and furnishes a basis for but one reasonable conclusion, the

[71 Mont. 449.]

only question for determination is one of law, and the court may direct a verdict in favor of the party entitled to it.

Joint Adventures — Issue Raised by Pleadings — Directed Verdict — Proper Denial.

4. In an action to recover one-half the profits of a joint adventure, plaintiff's allegation that she was entitled to that portion and defendant's affirmative plea that he did not owe her anything made an issue and therefore defendant's motion for a directed verdict was properly denied.

Same—Profits and Accumulations—Undisputed Evidence Showing Loss —Directed Verdict for Defendant Proper.

5. In an action of the nature of the above, the burden was upon plaintiff to show that the accumulations and profits claimed resulted from the operation incident to the joint enterprise (a farm); and where such burden was not only not sustained, but the undisputed evidence showed a loss instead of a profit, the court erred in refusing to direct a verdict in favor of defendant. (See par. 3, *supra.*)

*Appeal from District Court, Ravalli County; James M. Self, Judge.*

ACTION by Lina E. Gunder, formerly Lina E. Huggans, against Richard E. Huggans. Judgment for plaintiff and defendant appeals. Reversed and remanded, with directions to dismiss the complaint.

*Mr. H. H. Parsons,* for Appellant, submitted a brief, and one in reply to that of respondent, and argued the cause orally.

*Messrs. Baggs & Kurtz,* for Respondent, submitted a brief; *Mr. Geo. T. Baggs* argued the cause orally.

MR. JUSTICE STARK delivered the opinion of the court.

Plaintiff brought this action to recover the sum of $4,000 and interest, alleged to be due her from the defendant.

The complaint alleges that the parties are sister and brother, the only children of Richard M. and Eunice Huggans; that the father, Richard M. Huggans, died intestate in the state of Illinois on July 9, 1902, leaving an estate consisting of both real and personal property; that under the laws of the state of Illinois the plaintiff and defendant, with their mother, were entitled to all of said estate, and that, upon the death of the

mother, the plaintiff and defendant became entitled to the
whole of said property and the increase and accumulations
made thereto by their joint. efforts; that after the death of
the father the plaintiff, defendant and their mother lived upon,
took care of, managed and used said property without any
division thereof; and that after the mother's death the plain-
tiff and defendant, and the defendant's family, continued to
live upon and use the property in the same manner down to
January 28, 1919, when all of the property, both real and
personal, was sold by defendant for the sum of $40,000; that
plaintiff was entitled to one-half thereof, but that defendant
had paid to her only the sum of $16,000, and had refused,
after demand, to pay her the balance of $4,000, and prays
judgment for this amount.

The defendant's answer admits the relationship of the par-
ties, the death of the father and mother as alleged in the com-
plaint, and avers that after the mother's death "the parties
hereto owned the land mentioned in the complaint as tenants
in common and in equal shares"; that the real estate was sold
by the parties and the full price therefor paid to the defend-
ant, and that he had paid the plaintiff one-half thereof. Fur-
ther answering the complaint the defendant alleges "that he
paid the plaintiff one-half of the purchase price of the prop-
erty sold by him; that the plaintiff herein has been fully paid
for any and all moneys, sums or property coming to her by
reason of her being the daughter of the said Richard M.
Huggans and Eunice Huggans and a sister of the defendant,
and that the defendant herein does not owe the plaintiff any
sum whatsoever or at all." The answer further alleges that
after the death of the father, the defendant was appointed as
administrator of his personal estate, qualified and acted as
such; that thereafter said estate was duly administered and
a judgment duly given and made discharging him as such.

The affirmative allegations of the answer were denied by a
reply. The cause was tried on December 18, 1923, and re-
sulted in a verdict and judgment in favor of the plaintiff

for the sum of $5,564.45 and costs. From this judgment the defendant has appealed, and by a bill of exceptions brings up all the proceedings had at the time.

So far as material to a determination of this appeal, the undisputed facts developed at the trial are as follows:

The father of plaintiff and defendant died intestate in the state of Illinois in 1902, leaving a farm with a small amount of personal property; the defendant was appointed administrator of the personal estate of the deceased, administered the same, distributed the property and was duly discharged from his trust. At the time of the father's death, the parties were living in Sterling, Illinois, and about the year 1905 moved upon the farm with their mother, and resided there continuously down to the year 1919, with the exception of three years from 1907 to 1910, when they all lived together in Colorado. Until the time of her death in 1911, the mother lived with the parties during the periods of their residence upon the farm. The farm operations were carried on by the defendant. He planted, harvested and sold crops from year to year, bought and sold livestock and attended to the business generally. The proceeds arising from these transactions were put back into the business and used in the farming operations. Both plaintiff and defendant worked upon and about the farm, and there was never any agreement between them touching the matter of compensation which either was to receive, but each received support therefrom. Prior to the father's death he had given the plaintiff and defendant a house and lot in the town of Sterling. This piece of property was sold by them for the sum of $2,650 and the proceeds therefrom put into the farming operations. At some time after 1910, the date of which is not disclosed in the testimony, the defendant, out of his own funds, derived from sources independent of the farming operations, contributed to the business of the farm between six and seven thousand dollars. There was never any settlement or accounting between the parties, and plaintiff never asked for one until the summer of 1919.

In 1918 the parties decided to sell the property in Illinois and remove to Montana, and to carry out this plan, in July, 1918, contracted to sell the farm for $32,000, which deal was consummated by payment of the money on March 1, 1919, the plaintiff receiving one-half of that amount, or $16,000. On January 28, 1919, a public sale of some personal property on the farm was held and netted $4,200. Prior thereto, in the fall of 1918, there had been sold from the farm 736 bushels of oats, 1,426 bushels of barley, and 23 hogs, all of which brought the sum of $3,075.37. Some time before this a $1,000 Liberty bond had been bought. In 1919 the parties removed from Illinois to Montana and have resided here since that time. When the defendant came to Montana he brought with him from the farm certain personal property, which need not be considered here since the plaintiff does not in this action claim any interest therein.

Plaintiff testified that it was always her understanding that if there were any profits from these farming operations they were to be equally shared between the parties, and that if there were any losses they were to be equally borne, although there had never been any agreement to that effect.

With the foregoing facts in the record, both plaintiff and defendant rested, and thereupon defendant moved the court to direct the jury to return a verdict in his favor and against the plaintiff upon the grounds, among others, that the complaint does not state a cause of action, that the plaintiff had not made out a case for the jury, and that the evidence would not support a verdict in her favor. The motion for a directed verdict was overruled.

While numerous errors are assigned by counsel for defendant, it will not be necessary to consider any of them except the one which raises the question of the court's ruling on the motion for a directed verdict.

Defendant's objection to the complaint is that it does not [1] sufficiently plead the laws of the state of Illinois. In *McKnight* v. *Oregon etc. Ry. Co.,* 33 Mont. 40, 82 Pac. 661,

this court said: "It is an elementary rule that where one relies upon a statute of a sister state, such statute must be pleaded and proved as a fact." Under the complaint it would have been necessary for plaintiff to prove the law of succession of the state of Illinois to establish the fact that after the death of the father and mother she and the defendant were entitled to the whole of the father's estate. This she could not have done because the law was not sufficiently pleaded. (*Bank of Commerce* v. *Fuqua,* 11 Mont. 285, 28 Am. St. Rep. 461, 14 L. R. A. 588, 28 Pac. 291; *In re Estate of Bruhns,* 58 [2] Mont. 526, 193 Pac. 1115.) But the allegation in defendant's answer that after the death of the father and mother the plaintiff and defendant became the owners of the farm in equal shares, came to the aid of the complaint and rendered proof of the Illinois law of succession unnecessary (*Lynch* v. *Bechtel,* 19 Mont. 548, 48 Pac. 1112; *Hamilton* v. *Great Falls St. Ry. Co.,* 17 Mont. 334, 42 Pac. 860.)

Likewise, plaintiff's allegation that she was entitled to one-[3] half of the increase and accumulations of the land, coupled with defendant's affirmative plea that he did not owe the plaintiff any sum whatsoever and that he had been fully exonerated from any and all obligations and demands upon the part of the plaintiff, made an issue upon which the plaintiff was entitled to submit proof to the jury. The court did not err in denying the motion for a directed verdict upon the first ground stated.

The rule is established by numerous decisions of this court [4] that when, in a case being tried to a jury, the evidence is undisputed and furnishes a basis for but one reasonable conclusion, the only question for determination is one of law, and the court may direct a verdict in favor of the party entitled to it. (*Old Kentucky Distillery* v. *Stromberg-Mullins Co.,* 54 Mont. 285, 169 Pac. 734; *Consolidated Min. Co.* v. *Struthers,* 41 Mont. 565, 111 Pac. 152; *Milwaukee Land Co.* v. *Ruesink,* 50 Mont. 489, 148 Pac. 396.) With this rule in mind we proceed to an analysis of the facts in this case.

[71 Mont. 449.]

It is not disputed but that the plaintiff and defendant owned [5] the farm in equal shares. Counsel for plaintiff say in their brief that she "claims no interest except in the land and the increase, accumulations, and profits thereof." It is admitted that she received her full share of the proceeds derived from the sale of the farm itself, so that it is only left to determine whether the facts disclosed in the record show that the proceeds of the sales of the personal property and the $1,000 Liberty bond constitute "accumulations and profits" from the operations of the farm which should be divided between plaintiff and defendant.

Viewing the testimony in the light most favorable to the plaintiff's theory, the parties were engaged in a joint enterprise in carrying on farming operations upon land which was owned by them in equal shares. She reposed confidence in the defendant to the extent of allowing him to conduct the business in his own way. It was her understanding that out of these operations she was to receive one-half of the profits, if there were any, and was likewise to bear one-half of any losses which might be sustained. For a long term of years the defendant planted, harvested and marketed various agricultural crops and bought and sold livestock, the proceeds from which were invested and reinvested in the necessary conduct of the business. According to the undisputed testimony the plaintiff and defendant sold a house and lot in Sterling for the sum of $2,650, the proceeds of which went into the farming operations. It is also undisputed in the record that the defendant had put into these operations between six and seven thousand dollars of his own money, derived from sources wholly outside of the operations of the farm, and that each of the parties had contributed his services thereto without any agreement as to the compensation to be allowed therefor. Plaintiff's only contention in this action is that she is entitled to one-half of the $7,275.37 which came from the sales of the personal property, and one-half of the $1,000 Liberty bonds, on the theory that they represent "accumulations and profits" of the land dur-

ing the time the farming operations were being conducted in the manner above set forth.

From a consideration of the foregoing undisputed facts the fallacy of the plaintiff's contention is apparent. She stated that her reason for selecting the five items upon which she based her right of recovery was that they were the last sales of property made, apparently overlooking the fact that she only claimed one-half of the profits resulting from a business which had been carried on as a joint enterprise for so many years and failed to take into consideration any other matters.

Striking a balance of this joint enterprise from the figures as they appear in the record, it will be noted that the amount derived from these sales of personal property, plus the face value of the Liberty bond, was $8,275.37 as the final result of the enterprise; but, to offset this, $8,650 of outside money had been put into it, thus indicating, according to the record, a net loss of $374.63, and of this $8,650 defendant had contributed $7,425, and plaintiff $1,325. The burden was upon the plaintiff to prove that "accumulations and profits" resulted from the operations of the farm and that she was entitled to a portion thereof. This she wholly failed to do, but, on the contrary, the undisputed facts disclosed that instead of profits resulting, an actual loss was sustained. Under these conditions the plaintiff was not entitled to have her case submitted to the jury, and the defendant's motion for a directed verdict should have been sustained.

The judgment is reversed and the cause remanded to the district court, with directions to dismiss the complaint.

*Reversed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES RANKIN and HOLLOWAY concur.

### On Rehearing.

(Resubmitted January 15, 1925.   Decided February 13, 1925.)

Opinion: PER CURIAM:

A consideration of this case after argument of counsel on the rehearing leads us to the conclusion that the result announced in the original opinion filed November 8, 1924, is correct, and, for the reasons therein stated, the judg- ment is reversed and the cause remanded to the district court, with directions to dismiss the complaint.

*· Reversed and remanded.*